Argued and submitted August 13, 2013, judgment entered on October 11, 2011, vacated and remanded September 10, 2015

PRIVATE CAPITAL GROUP, LLC,
as assignee of Greenpoint Mortgage Funding, Inc.,
fka Greenpoint Mortgage Corp.,
*Plaintiff-Respondent,*

*v.*

Steven D. HARRIS,
*Defendant-Appellant,*

*and*

Rebecca J. HARRIS, et al.,
*Defendants.*

Clackamas County Circuit Court
CV03120084; A150011

363 P3d 529

Jonathan M. Radmacher argued the cause for appellant. With him on the briefs was McEwen Gisvold, LLP.

David A. Weibel argued the cause for respondent. On the brief were Charles T. Meyer, Esq., and Wright, Finlay, & Zak LLP.

Before Nakamoto, Presiding Judge, and Hadlock, Judge, and Egan, Judge.*

HADLOCK, J.

---

* Hadlock, J., *vice* Armstrong, P. J.

## HADLOCK, J.

This judicial-foreclosure action led to a sheriff's sale of residential real property to which defendant Steven Harris had held title, and against which he had borrowed several hundred thousand dollars, secured by a trust deed on the property. A general judgment of foreclosure was entered in 2004 and a supplemental judgment for costs and attorney fees was entered in 2005, but the sheriff's sale did not occur until 2011. In the interim period, plaintiff—a successor to the lender and trust-deed beneficiary—paid taxes and other expenses on the property while defendant continued to occupy it. At the 2011 sheriff's sale, plaintiff credit bid an amount that included the advances and that was, therefore, an amount larger than had been included in the money awards in the 2004 and 2005 judgments. The trial court concluded the litigation, post-sale, by (1) ordering that plaintiff could not properly include advances in its credit bid, (2) entering a "second supplemental general judgment" awarding plaintiff the advances it had made for taxes and certain other expenses,[1] and (3) entering an order in which it purported to apply the excess amount of the credit bid to satisfy that newly entered judgment. On defendant's appeal, we vacate the "second supplemental general judgment" and remand.

## I. FACTS

### A. *Events Leading Up To, and Including, the Foreclosure Sale*

For purposes of our review, the pertinent facts are procedural and undisputed. This is a foreclosure action related to residential real property in Portland. In 2003, plaintiff GreenPoint Mortgage Funding, Inc., filed a complaint for judicial foreclosure against defendant Steven Harris, who held title to the property, and others.[2] Plaintiff

---

[1] The exact nature of the other expenses, in addition to taxes, that plaintiff sought to recover has varied to some extent through the course of this litigation. That variance does not matter to our analysis, so we do not describe those other expenses in this opinion.

[2] The complaint also named Rebecca Harris and the Oregon Department of Revenue as defendants, alleging that Rebecca Harris claimed an interest in the property by virtue of a lien for child and spousal support and that the

alleged that defendant had executed a note in the amount of $490,000, secured by a deed of trust on the property in favor of plaintiff's predecessor in interest, and had agreed to make monthly payments on the note for a term of 30 years, starting in 1998.[3] Plaintiff alleged that defendant failed to make the required monthly payments starting in October 2002. Consequently, plaintiff claimed, it was due several hundred thousand dollars, including over $400,000 in principle and interest, certain escrow advances, foreclosure costs, undetermined amounts of "prejudgment collection costs," and attorney fees. Plaintiff sought a judgment foreclosing the deed of trust and awarding the amount of money allegedly due to plaintiff.[4] Defendant eventually filed an answer that incorporated affirmative defenses and counterclaims.

The parties entered a stipulated general judgment of foreclosure and money award in December 2004. That stipulated general judgment provided, in pertinent part:

"BASED UPON THE STIPULATION OF THE PARTIES,

"IT IS HEREBY ORDERED AND ADJUDGED that judgment shall be entered in favor of Plaintiff GreenPoint Mortgage Funding (GreenPoint), against Defendants Steven D. Harris, Rebecca J. Harris and State of Oregon Department of Revenue (DOR) as follows:

"1. GreenPoint is awarded Judgment against Defendant Steven D. Harris in the amount of $600,859.73 for past due principal, interest, advances and fees as of October 31, 2004, itemized as follows:

---

Department of Revenue claimed an interest in the property by virtue of several tax liens. Rebecca Harris initially filed an answer, in which she admitted that plaintiff "ha[d] a superior lien to hers on the * * * property," but she did not appear later in the proceedings. By the time the 2011 judgment was entered that is the subject of this appeal, Steven Harris was the only defendant appearing in the case, and he is the only defendant that is a party to this appeal. Accordingly, we refer to defendant Steven Harris simply as "defendant" throughout this opinion.

[3] GreenPoint later assigned the judgments it obtained in this case (a 2004 stipulated general judgment of foreclosure and a 2005 supplemental judgment, discussed later in this opinion) to Private Capital Group, LLC. We refer to GreenPoint and Private Capital Group, LLC, individually and collectively as "plaintiff" in this opinion.

[4] The original complaint also included a claim for money had and received against Harris, which plaintiff later dismissed.

"Unpaid Principal Balance     $469,921.29

"Interest     $ 65,909.76

"Escrow Advance     $ 64,106.87

"Recording Fee     $ 21.00

"Accrued Late/HSF charges     <u>$ 900.81</u>

"Total     $600,859.73

"plus pre-judgment and post-judgment interest *** until paid, plus costs and attorneys fees incurred herein to be determined pursuant to ORCP 68 and set forth in a Supplemental General Judgment, plus GreenPoint's costs (including attorney fees) to partition the property encumbered by the Trust Deed *** from the larger parcel owned by Steven Harris, which shall be set forth in a Supplemental General Judgment following the partition, *plus any advances Greenpoint may make which may be set forth in a Supplemental General Judgment.*

"2. The Trust Deed executed and delivered by Defendant Steven D. Harris *** is a valid lien for the amount of Plaintiff's Judgment entered herein against [the subject] real property ***.

"3. GreenPoint's lien for the amount set forth in paragraph 1 is superior to any right, interest, lien or claim of Defendants or any of them, in that property. Defendants Rebecca J. Harris and DOR have valid junior liens. ***

"4. GreenPoint's Trust Deed is foreclosed against the [subject property], and all interest that Defendant Steven D. Harris had on and after May 7, 1998 in the real property, or so much interest as may be necessary to satisfy the Judgment of GreenPoint, shall be sold by the sheriff of Clackamas County, Oregon ***.

"5. The proceeds of the sale shall be applied first toward the costs of the sale, then toward satisfaction of Plaintiff's Judgment awarded in paragraph 1 herein and partition costs, advances, costs and attorneys fees awarded therein; and the surplus, if any shall be distributed as follows:

"[Specifying payments to Rebecca Harris and the Oregon Department of Revenue.]

"(c) In the event the above-named parties are paid in full, the balance shall be distributed to Defendant

Steven D. Harris or to such party or parties as may establish their right thereto.

"6.   Each Defendant and all persons claiming through or under any Defendant, as purchasers, encumbrancers, or otherwise, are forever foreclosed of all interest, lien, or claim in the real property * * * excepting only any statutory right of redemption as any Defendant may have therein.

"7.   GreenPoint or any other party to this suit may become the purchaser at the sale of the real property. *GreenPoint is permitted to bid by submitting a credit bid in an amount up to and including the amount of the Judgment set forth in paragraph 1 herein, plus any advances.* * * *

"8.   The judgment granted herein is solely for purposes of foreclosing the residential trust deed and GreenPoint shall not be entitled to a deficiency judgment pursuant to ORS 86.770(4).

"* * * * *

"13.   Until partition and foreclosure is complete, GreenPoint agrees that Defendant Steven D. Harris may live in the house, and shall be responsible for all utilities, regular maintenance expenses and insurance, and shall generally keep the house in present condition or better until the property is partitioned and foreclosed. * * * Defendant Steven D. Harris shall be responsible for all outstanding property taxes, and all pro-rata property taxes that accrue up to the date of foreclosure sale. *In the event Defendant Steven D. Harris fails to pay the taxes, Greenpoint may advance sums for the payment of taxes, and may add the advance to the amount of Greenpoint's credit bid or may set forth the amount in Supplemental General Judgment."*

(Emphasis added.)

The judgment included a money award in plaintiff's favor with a principal amount of $600,859.73, plus prejudgment and postjudgment interest, plus costs and attorney fees to be determined under ORCP 68 and set forth in a supplemental judgment. Plaintiff later petitioned for attorney fees and costs, and the trial court entered a supplemental judgment for fees and costs in early 2005.

Several years passed before the property was partitioned, leading to delay of the foreclosure sale. In March

2011, plaintiff filed a "praecipe for execution" in the trial court, asking the court "to issue an execution" to the sheriff on the 2004 stipulated general judgment of foreclosure (as amended to reflect the legal description of the property post-partition). In that praecipe, plaintiff averred that the stipulated general judgment entitled it to recover, from proceeds from sale of the property, "the costs of the sale, * * * satisfaction of Plaintiff's Money Award of $600,859.73, together with pre-judgment and post-judgment interest * * *, plus [certain costs and attorneys' fees, including those associated with partitioning the property], along with costs of this writ, sheriff's fees, sales costs, and all other recoverable costs pursuant to law." Plaintiff also submitted a "writ of execution in foreclosure," later signed by the trial court administrator, which commanded the sheriff to sell the property, and which included similar information about the sums owed to plaintiff. Neither the praecipe nor the writ mentioned the advances.[5]

The sheriff auctioned the property in April 2011. Plaintiff submitted a credit bid for the property, which was the highest bid, and it purchased the property by way of its credit bid of $914,332.81. The sheriff detailed the terms of the sale in a "return on real property sale" filed in the trial court later that month. Later proceedings revealed that plaintiff's credit bid included $97,692.59 in advances, including $93,761.39 in taxes, amounts that were not included in the money award either in the 2004 stipulated general judgment of foreclosure or in the 2005 supplemental judgment.

B.  *Post-Sale Events*

Shortly after plaintiff successfully credit bid for the property, defendant objected to the sheriff's return and asked the trial court not to confirm the sale. In his objection, defendant asserted that, under ORS 18.936, plaintiff properly could credit bid only up to an amount equaling the sum of any money awards, costs and attorney fees, and the costs

---

[5] The pertinent versions of the praecipe and writ are actually the second amended versions of those documents, as plaintiff had filed earlier praecipes and writs. However, because those earlier filings are not pertinent to our analysis, we do not describe them here, and we refer to the operative documents simply as the praecipe and the writ.

of sale. That amount, according to defendant, totaled only $816,640.22. Because plaintiff had successfully credit bid more than that amount—$914,332.81—defendant argued that the excess $97,692.59 "must be collected from Plaintiff in cash, and distributed (pursuant to ORS 18.950) to [defendant] and any remaining judgment or lien creditors." Defendant suggested that, if plaintiff had wanted to recover the money it advanced, it should have obtained a supplemental judgment before the foreclosure sale that included a money award for the amount of the advances.

In response to defendant's objection, plaintiff moved for an order confirming the sale. Plaintiff argued that it had properly included advances in the amount it credit bid at the sheriff's sale because the 2004 stipulated general judgment expressly provided that plaintiff could do so.

Plaintiff also advanced an alternative argument, in case the trial court determined that plaintiff's inclusion of taxes and insurance in the credit bid had been improper. In that event, plaintiff argued, the court "should allow Plaintiff to supplement its judgment to include taxes and insurance in the money award, and apply the proceeds of the sale to satisfy the supplemental judgment." In conjunction with that argument, plaintiff moved "for entry of a Second Supplemental General Judgment and Money Award," to include amounts compensating plaintiff for the money it had advanced for taxes and insurance.

In response to plaintiff's motion, defendant expressed agreement that the circuit court should confirm the sheriff's sale. He took a different view, however, regarding the result of confirmation. According to defendant, "[b]ecause Plaintiff bid more than its Money Award (ORS 18.934(2)), Plaintiff must be ordered to tender the excess amount that the Sheriff should have collected, which amount must be disbursed." Consistently with that argument, defendant moved for disbursement of funds, seeking an order directing the sheriff to distribute the $97,692.59 by which plaintiff's credit bid exceeded the amount that defendant argued was permissible. Defendant also opposed plaintiff's motion for entry of a "supplemental general judgment and money award" on several grounds.

In reply, plaintiff argued that "ORS 18.954 allow[ed] the court to order in the Stipulated Judgment that Plaintiff may include advances in the credit bid, even if they are not included in the money award." Plaintiff also argued that defendant was estopped "from taking a position after the execution sale that is inconsistent with the position he successfully asserted in the [2004] Stipulated Judgment." Finally, plaintiff reiterated its argument that, if the court found that proceeds from the sale existed because plaintiff should not have included taxes and insurance in the credit bid, the court should include those advances "in a supplemental judgment award and apply the proceeds to the award."

The circuit court held an initial hearing on the pending motions in July 2011. At that hearing, defendant acknowledged that ORS 18.936—the statute that limits the amounts that creditors can credit bid—had not been enacted until after the stipulated general judgment was entered in this case, and that the statute had an effective date of January 1, 2006. Nonetheless, he argued, "by virtue of the 2006 legislative change, the procedure that has to be followed on the 2004 judgment is modified and the person holding the judgment can't rely on the law as it existed in 2004." Defendant did not dispute plaintiff's assertion that the stipulated judgment itself contemplated that plaintiff's credit bid could include amounts for property taxes that defendant should have paid, but did not, during the delay attributable to partition.

At the end of the hearing, the trial court orally denied defendant's "motion on the writ" and ordered that the sale would be confirmed. At some point, plaintiff submitted a proposed form of judgment, to which defendant objected. The court ordered a rehearing on the parties' motions, which was held in August 2011.

At that second hearing, defendant again objected to the return of the second amended writ of execution, because the sheriff had accepted a credit bid of "a hundred thousand dollars more than they're allowed to credit bid under the statute," which confines the credit bid to the money award, plus certain specified costs and fees. Defendant argued that

the sheriff should have collected cash making up the difference between the actual bid and sale amount and the credit-bid amount permissible under ORS 18.936.

The trial court orally granted plaintiff's motion to confirm the sale. It sustained defendant's objection to the sheriff's return of the writ of execution on the ground that "the second amended writ of execution controls what may be included" in the credit bid. However, the court denied defendant's motions to disburse the excess $97,692.59. Instead, the court allowed plaintiff's motion for a second supplemental judgment, to include advances "as provided for in the original judgment."

After that hearing, plaintiff submitted a proposed "second supplemental general judgment" for the trial court's consideration. In conjunction with approving that proposed judgment, the court issued an "order on rehearing" that provides, in part:

"The Court, having considered the motions and the record herein, and being fully advised, makes the following findings of fact and conclusions of law:

"1.   The Stipulated Judgment did not specify insurance payments as an advance and therefore Plaintiff's insurance payments may not be included in the Second Supplemental Judgment and Money Award.

"2.   The Second Supplemental General Judgment and Money Award shall have the priority of the original Stipulated Judgment.

"3.   Any proceeds from the sale shall be applied to satisfy amounts owed in the Second Supplemental Judgment and Money Award.

"4.   The Second Amended Writ of Execution controls the amounts that may be included in Plaintiff's credit bid.

"IT IS HEREBY ORDERED that

"1.   Plaintiff's Motion for Second Supplemental General Judgment and Money Award is Allowed, except for amounts relating to insurance paid by Plaintiff because insurance was not specified as an advance in the Stipulated Judgment. Plaintiff's Second Supplement[al] General Judgment and Money Award shall have the priority of the original Stipulated Judgment;

"2. [Defendant's] Objection to Sheriff's Return of Writ of Execution is Sustained because the Second Amended Writ of Execution controls what may be included in the credit bid;

"3. [Defendant's] Motion for Disbursement of Funds in the amount of $97,692.59 is Denied.

"4. Plaintiff's Motion for Order Confirming Sale of Real Property is Allowed[.]"

That order was entered on October 11, 2011. The court simultaneously signed and entered the "second supplemental general judgment," which provides:

"On December 23, 2004, a Stipulated General Judgment of Foreclosure and Money Award was entered herein in favor *of plaintiff* * * * and against defendants Steven D. Harris, Rebecca J. Harris, and the State of Oregon Department of Revenue. On January 31, 2005, a Supplemental Judgment was entered. Pursuant to the Order of this Court, the Stipulated General Judgment of Foreclosure and Money Award is supplemented as follows:

"IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff is awarded advances in the amount of $114,269.98 (the sum of $93,761.39 for taxes and $20,508.59 for sewer assessments), and attorneys' fees in the amount of $10,575 (attorney fees incurred from November 21, 2008 through * * * the date of notification to Plaintiff's counsel of the recording of the partition)."

It is that judgment from which defendant appeals.[6]

---

[6] Oregon law does not recognize a "supplemental general judgment." A judgment may be either a general judgment or a supplemental judgment, but it cannot be both. ORS 18.005(7), (17); ORS 18.038(2). Nonetheless, we have jurisdiction to review defendant's appeal from that judgment, in which the trial court decided "one or more requests for relief," ORS 18.005(8) (defining "judgment"), of a type that—under ordinary circumstances—"may be rendered after a general judgment pursuant to a legal authority." ORS 18.005(17) (defining "supplemental judgment"). That is, as discussed later in this opinion, a supplemental judgment that follows a general judgment of foreclosure *ordinarily* may include an award of advances made by the plaintiff after entry of the general judgment, so long as the circumstances of the case provide a basis for that award. *See* 273 Or App at 547. Moreover, the judgment document is "plainly titled as a judgment" and it meets each of the other jurisdictional requirements set forth in ORS 18.245. Thus, the October 11, 2011, judgment is an appealable judgment over which we have jurisdiction, despite being mislabeled. Our jurisdiction over defendant's appeal from that judgment also gives us authority to review the order on rehearing, which the court entered earlier the same day. ORS 19.425.

## II. THE PARTIES' ARGUMENTS ON APPEAL

In his first assignment of error, defendant challenges the trial court's entry of the October 11, 2011, "second supplemental general judgment." Defendant contends that, once the foreclosure sale had occurred, "there was no legal basis for supplementing that money award with 'taxes' or 'insurance.'" Indeed, defendant asserts, once the property was sold, ORS 86.770—the statute that generally prohibits entry of deficiency judgments after judicial foreclosure on a residential trust deed—precluded the trial court from awarding any additional money to plaintiff. In his second assignment of error, defendant asserts that the trial court erred when it denied his motion "to order Plaintiff to deposit $97,692.59 with the Sheriff, and to have the Sheriff disburse those funds to junior lien creditors and/or to Defendant Harris." Defendant points out that the trial court agreed with him that plaintiff could not properly credit bid an amount exceeding that specified in the second amended writ of execution. Accordingly, defendant argues, ORS 18.936 required plaintiff to tender the excess amount—$97,692.59—to the sheriff, who should have then distributed those proceeds of sale "to junior lienholders, and/or to [defendant]."

On the merits, plaintiff responds to defendant's first assignment of error by asserting that it was entitled to include advances in its credit bid under the terms of the 2004 stipulated general judgment. Plaintiff also cites ORS 18.936, arguing that it allows for "flexibility" in credit bids "to encompass recoverable costs"—like the advances in this case—despite those amounts not being included in a money award. Alternatively, plaintiff argues that ORS 18.954 gave the trial court discretion to enter the 2011 judgment after the foreclosure sale. In response to defendant's second assignment of error, plaintiff asserts simply that the two assignments "are mirror images of each other," suggesting that this court should reject the second assignment for the same reasons that plaintiff argues this court should reject the first.[7]

---

[7] Plaintiff also argues that this court lacks jurisdiction over defendant's appeal because parties to a stipulated judgment generally may not appeal that judgment, ORS 19.245(3), and in this case, "the Second Supplemental General Judgment *** is merely an extension of the original 2004 Stipulated General

## III. ANALYSIS

A. *Judgments, Judicial-Foreclosure Proceedings, and Sheriff's Sales*

Before addressing the particular questions presented in this procedurally unusual case, we review some of the general legal principles that govern the form and content of judgments (including foreclosure judgments), the execution of those judgments, and foreclosure sales. Our analysis is of the law as it existed in 2011, when the trial court issued its challenged order and judgment. Accordingly, all statutory citations in this opinion are to the 2011 versions of the Oregon Revised Statutes, except as otherwise noted.[8]

Because this case involves enforcement of a judgment, as reflected in a judgment document, and the trial court's entry of a document titled a "second supplemental

---

Judgment and thus is not appealable." Based on similar reasoning, plaintiff also argues that the appeal does not present a justiciable controversy, because the 2011 judgment has no effect on plaintiff beyond that of the 2004 stipulated general judgment. We reject those jurisdictional arguments without extended discussion, observing only that defendant has appealed from the 2011 judgment, not from the 2004 stipulated judgment, and it was not until the 2011 judgment and order were entered that any court actually awarded advances to plaintiff and ordered that proceeds of a sale that occurred in 2011 could be applied to satisfy that award.

[8] The 2015 legislature amended some of the statutes related to judicial foreclosure, providing that those amendments "apply to foreclosure suits that commence or that are pending on or after the effective date" of the amendments— that is, June 8, 2015. Or Laws 2015, ch 291, § 6. Some of the amendments are significant, providing, for example, that a judgment of foreclosure "must include a declaration of the amount of the debt that the lien secures," *id.* § 4 (amending ORS 88.010), and that a judgment creditor that credit bids at a foreclosure sale need not pay the sheriff for any amount bid that does not "[e]xceed[] *the amount declared in the judgment*, calculated as of the date of the execution sale, for a judgment that directs the sale of specific real or personal property, plus the costs of the sale *** that the judgment creditor paid," *id.* § 2 (amending ORS 18.936 (emphasis added)).

Although the parties have not raised the issue, we have considered, and rejected, the possibility that the 2015 amendments should guide our analysis of the issues presented in this appeal. Although the amendments apply to "pending" foreclosure suits, because the amendments relate specifically to acts that occur *in the trial courts*, we conclude that the legislature intended that the amendments apply only to actions pending in those courts, and not to actions pending on appeal. *Cf. Robinson v. Lamb's Wilsonville Thiftway*, 332 Or 453, 460, 31 P3d 421 (2001) (concluding that amendments to ORCP 47 C applied "only to actions pending in trial courts" and not to actions pending on appeal, despite a legislative provision stating that the amendments "apply to all actions pending on or commenced after" the amendments' effective date).

general judgment," we begin by considering the statutes that specify what judgment documents may—and may not—include. A "judgment document" incorporates a court's judgment, ORS 18.005(9), that is, its "concluding decision * * * on one or more requests for relief[.]" ORS 18.005(8). In civil actions, a judgment document generally can come in only one of three forms: "a limited judgment, a general judgment or a supplemental judgment." ORS 18.038(2). As pertinent here, a general judgment "means the judgment entered by a court that decides all requests for relief" except for requests previously decided by limited judgment and requests that may be decided by supplemental judgment. ORS 18.005(7). A supplemental judgment is "a judgment that may be rendered after a general judgment pursuant to a legal authority." ORS 18.005(17).

A judgment that awards money to a party creates a judgment lien only if it includes "a separate section clearly labeled as a money award." ORS 18.042(1). If the judgment awards money but does not include that separate section, the judgment "does not create a judgment lien but may be enforced by any other judgment remedy." *Id.* The separate "money award" section in the judgment must include, among other things, the "amount of money awarded in the judgment" and any owed interest, arrearages, costs, or attorney fees. ORS 18.042(2)(d) - (h). Except in circumstances not pertinent here, the separate "money award" section of the judgment may not include any other provision. ORS 18.042(4). A trial court may not sign a proposed judgment document that does not comply with those requirements. ORS 18.052(1).

We turn to the statutes that more specifically govern judicial foreclosure of trust deeds, starting with ORS 86.705(7), which provides that a trust deed is a deed executed under the Oregon Trust Deed Act (OTDA) "that conveys an interest in real property to a trustee in trust to secure the performance of an obligation the grantor or other person named in the deed owes to a beneficiary." *See generally Brandrup v. ReconTrust Co.*, 353 Or 668, 676-78, 303 P3d 301 (2013) (discussing the OTDA). That is, the trust deed creates a lien on the property that secures the borrower's obligation to repay the loan obtained from the beneficiary, *i.e.*, the lender. *Hucke v. BAC Home Loans Servicing, L.P.,*

272 Or App 94, 101-02, 355 P3d 154 (2015); *Brandrup,* 353 Or at 674 ("A 'beneficiary' for purposes of the OTDA is the person to whom the obligation that the trust deed secures is owed. At the time of origination, that person is the lender."). If the borrower does not pay the obligation, the beneficiary's remedies include judicial foreclosure. *See* ORS 86.710 ("[A] trust deed, executed in conformity with [the OTDA], may be foreclosed by advertisement and sale * * * or, at the option of the beneficiary, may be foreclosed by the beneficiary as provided by law for the foreclosure of mortgages on real property."); ORS 88.010 ("Except as otherwise provided by law, a lien upon real or personal property, other than that of a judgment, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit.").

When a beneficiary successfully pursues judicial foreclosure and obtains a judgment of foreclosure, that judgment "shall order the mortgaged property sold." ORS 88.080. When the foreclosure judgment is in favor of only the plaintiff (the beneficiary), the judgment "may be enforced by execution as an ordinary judgment for the recovery of money" and "an execution may issue thereon against the property adjudged to be sold * * * as in ordinary cases." ORS 88.060(1). Thus, the property may be sold through a sheriff's sale.

A sheriff's sale is triggered by a writ of execution that directs the sheriff to "[l]evy on and sell real property of the judgment debtor and deliver the proceeds to the court for application against amounts owing on a money award." ORS 18.860(1)(a). A judgment creditor may obtain such a writ by requesting one from a court administrator, who "shall issue a writ of execution for any judgment that includes a money award or that requires the delivery or sale of specific real or personal property." ORS 18.865(1). In the context of judicial foreclosure, the writ must describe the judgment of foreclosure and, "if the writ of execution is issued for application of property of the judgment debtor against a money award, the writ must state the amount owing on the money award, including interest, as of the date that the request for issuance of the writ is mailed or delivered to the court administrator." ORS 18.862(1). "The writ must also state the amount of interest accruing on the money award each day." *Id.*

Having obtained the writ of execution, the judgment creditor may then deliver the writ to the sheriff. The judgment creditor must "provide instructions to the sheriff with [the] writ of execution," specifying, among other things, the identities of the persons to whom notice of sale must be given. ORS 18.875(1); ORS 18.918(3).

After giving notice of sale, the sheriff may conduct an execution sale of real property by public oral auction. ORS 18.924; ORS 18.930. Although a sheriff normally accepts payment for property sold at a sheriff's sale by "cashier's check or cash," ORS 18.938(1), a practice of "credit bidding" has developed, by which a creditor "bid[s] for the property using the debt it is owed to offset the purchase price," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, ___ US ___, 132 S Ct 2065, 2069, 182 L Ed 2d 967 (2012). It appears that, before 2006, no Oregon statute expressly authorized creditors to participate in sheriff's sales through credit bids, although—as the 2004 stipulated general judgment reflects—credit bidding occurred nonetheless. In 2005, the legislature enacted ORS 18.936(1), which became effective on January 1, 2006, and which specifically governs the credit-bidding practice:

> "The judgment creditor who requested issuance of the writ of execution may make oral bids for property to be sold at an execution sale. If the oral bid of the judgment creditor is the highest bid, the judgment creditor need not make any payment to the sheriff other than for:
>
> "(a)  Any unpaid sheriff's fees for the execution sale;
>
> "(b)  The amount of an exemption claimed by the debtor that the judgment creditor agrees to or that a court has determined applies to the property; and
>
> "(c)  Any amount bid by the judgment creditor that exceeds the full amount owing on the money award, calculated as of the date that the sale is to be conducted, plus the costs of the sale as described in ORS 18.950(2) that have been paid by the judgment creditor."

Thus, a judgment creditor who purchases real property through a credit bid that consists only of "the full amount owing on the money award," plus the costs of sale that the creditor already has paid, need not pay the sheriff for the

property by cashier's check or cash. Rather, the judgment creditor pays the sheriff only for any amount it bid in *excess* of that amount (as well as for any unpaid sheriff's fees or an exemption of the debtor).

After the sale has occurred, the sheriff makes a return on the writ of execution to the trial court administrator. ORS 18.872. After deducting certain fees and costs of the sale, "the sheriff shall deliver all net proceeds from an execution sale to the court administrator with the sheriff's return on the writ." ORS 18.950(1). Once the sheriff has made the return on the writ, the sale of real property "is conclusively established to have been conducted in the manner [statutorily] required *** unless the judgment debtor *** files an objection to the sale no later than 10 days after the filing of the sheriff's return." ORS 18.948(1). If the judgment debtor objects to the sale, the court schedules a hearing and, after that hearing, "shall grant an order confirming the sale unless the person objecting to the sale establishes that the sale was not conducted in a manner that substantially conformed with the manner required by law, and that as a result it was probable that the person suffered damage." ORS 18.948(2).

If the sheriff has delivered net proceeds from the sale, the court "shall enter an order of distribution for the proceeds." ORS 18.950(1). Once the underlying judgment has been satisfied, "the court administrator shall pay the remaining proceeds as directed by the court in the order of distribution." ORS 18.950(4).

B. *Application of the Law to the Facts*

lpmWith that background in mind, we consider defendant's challenges to the October 11, 2011, "second supplemental general judgment" and the associated order on rehearing. The complicating factor here is that the 2004 stipulated general judgment included provisions authorizing plaintiff to recover any advances it made for tax payments either by credit bid or through entry of a supplemental judgment. Before addressing the effect of those stipulated provisions, we consider what the trial court properly could have done if this were a more ordinary case, that is, if the general judgment of foreclosure had *not* included those provisions.

In that hypothetical "ordinary" case, if the lender credit bid more than the "full amount owing on the money award, calculated as of the date that the sale is to be conducted," plus any sale costs that the lender already had paid, then the lender would be required to pay that excess amount to the sheriff as proceeds of the sale. ORS 18.936. Moreover, the "full amount owing on the money award" that created a lien subject to foreclosure could not properly include anything other than "the amount awarded in the judgment," plus certain specified interest, arrearages, costs and attorney fees. ORS 18.042(1), (2), (4). Thus, if the lender made advances, after entry of the foreclosure judgment and money award, the lender would not be able to recover those advances through a credit bid unless it *first* obtained a supplemental judgment that included a money award for those advances. If the lender credit bid an amount that included the advances without first obtaining such a supplemental judgment (and including that supplemental judgment in the foreclosure proceedings), the lender would be required to pay the sheriff the amount exceeding the "full amount owing on the money award," and that amount—now proceeds of the sale—would have to be distributed according to an order of distribution entered by the trial court.

Thus, if this case fit that "ordinary" fact pattern, the trial court would have been required to enter an order of distribution and to distribute the $97,692.59 accordingly. That is, although defendant may or may not have correctly identified *to whom* the proceeds of sale would have to be distributed pursuant to such an order—a topic on which we express no opinion—he would have been correct in arguing that the trial court was required to identify the excess $97,692.59 as proceeds of sale and to distribute them by order in accordance with that designation.

Moreover, the court could not have accomplished its apparent goal of awarding advances to plaintiff by entering a post-sale judgment including that award, even if it were properly labeled as a "supplemental judgment." True, when plaintiff made the advances by paying taxes, the advances became part of the debt that defendant owed plaintiff and that was secured by the trust deed. *See* ORS 86.050 ("Whenever a mortgagor fails to pay when due any taxes

\* \* \* necessary to be paid for the protection of the lien of a mortgagee, the mortgagee may pay the same, and such payments shall be added to the mortgage debt and secured by the mortgage held by the mortgagee \* \* \*."). Moreover, plaintiff could have obtained a second supplemental judgment *before* the sheriff's sale that included a money award for the advances; had it done so, its credit bid properly could have included that amount.

However, plaintiff did not do that. Again, we first address the implications of plaintiff's inaction as though this were the hypothetical "ordinary" case in which the underlying foreclosure judgment did not include the provisions about future advances. In those circumstances, once the property was sold through the sheriff's sale, the trial court would have had to order disbursement of the amount of plaintiff's credit bid that exceeded the amount of the money award, plus costs, pursuant to an order of distribution. In other words, plaintiff could have recovered only that latter amount—the money award plus costs—as a direct result of the sheriff's sale. Because that amount was less than the total amount that defendant owed plaintiff, given his debt to plaintiff for the advances for taxes, the sheriff's sale would have left a "deficiency"—it would not have made plaintiff whole. And under ORS 86.770(2), the "anti-deficiency statute," plaintiff could not have recovered that deficiency through entry of a new, post-sale judgment. *See* ORS 86.770(2) ("Except in [circumstances not applicable here], \* \* \* after a judicial foreclosure of a residential trust deed, an action for a deficiency may not be brought or a judgment entered against the grantor" on any "obligation secured by the trust deed for the property that was subject to \* \* \* the judicial foreclosure[.]"); *Cottage Grove Apartment Investers v. Brandenfels*, 69 Or App 192, 197-98, 684 P2d 1235 (1984) (where a foreclosed deed of trust provided that the grantor would pay the attorney fees associated with any future foreclosure proceedings, and the proceeds from a later foreclosure sale were insufficient to satisfy an award of those fees, the fees were "an obligation secured by the trust deed," and ORS 86.770(2) precluded the trial court from entering a judgment for those fees that survived the foreclosure sale).

In sum, if it were not for the provision in the 2004 stipulated general judgment specifying that plaintiff could recover any advances it made for taxes through a credit bid, we readily would conclude that the trial court erred in entering the "second supplemental general judgment" and in denying defendant's motion for distribution of sale proceeds.

The remaining question, then, is whether that provision of the 2004 stipulated general judgment affects the result of this appeal.[9] For the reasons that follow, we conclude that it does not.

In defending the trial court's resolution of the case, plaintiff first argues that ORS 18.954 gave the court discretion to enter the second supplemental judgment after the sheriff's sale, to avoid what otherwise would be an inequitable result, given the terms of the 2004 stipulated general judgment. That statute provides:

> "A court, by the terms of a judgment or order, may direct that an execution sale under a specific judgment be conducted in a manner different than the manner specified by ORS 18.860 to 18.993. The Chief Justice of the Supreme Court may by court rule provide that execution sales be conducted in a manner different than the manner specified by ORS 18.860 to 18.993."

ORS 18.954.

That statute, by its terms, relates to the manner in which execution sales are conducted. Entry of a "supplemental general judgment" after the sale is not part of the manner in which the sale is conducted. Moreover, when ORS 18.954 discusses the "manner" of conducting a sale that the trial court has discretion to change, it refers to ORS 18.860 to 18.993, the statutes that govern writs of execution, the creditor's instructions to sheriff, the manner in which the sheriff can levy on property, the execution sale itself (including requirements for notice of sale and confirmation of sale), and redemption. None of those statutes relates to the

---

[9] The 2004 stipulated general judgment also specified that plaintiff could recover advances through entry of a supplemental judgment. That provision does not affect our analysis, as it did nothing more than expressly authorize plaintiff to obtain a supplemental judgment for any advances *before* the sheriff's sale, as ORS 86.050 would have permitted in any event.

permissible form or content of the judgment that is being foreclosed or that will be satisfied through proceeds of the sale. We conclude that—whatever the scope of a court's discretion under ORS 18.954—it does not extend to entering a "supplemental general judgment"—or even a properly designated "supplemental judgment"—after a sheriff's sale, awarding the judgment creditor sums to be paid from the proceeds of the sale that has already occurred.

Plaintiff also asserts that, because its credit bid "was specifically authorized" by the 2004 stipulated general judgment, "the inclusion of the advances in the credit bid is * * * valid" even without entry of the "second supplemental general judgment." Plaintiff does not elaborate on that argument, except to insist that inclusion of that provision in the 2004 judgment means that it would be inequitable for this court to do anything other than affirm the trial court's judgment.

To the extent that plaintiff suggests that *the trial court* had discretion, either under ORS 18.954 or based on some other unidentified equitable principle, to allow the full credit bid to stand, plaintiff's argument cannot prevail for the simple reason that the trial court did not take that course. To the contrary, the trial court *sustained* defendant's objection to the sheriff's return on the writ of execution on the ground that "the Second Amended Writ of Execution controls what may be included in the credit bid."

Plaintiff also appears to assert that, as a matter of law, it was entitled to include the advances in its credit bid pursuant to the terms of the 2004 stipulated general judgment, notwithstanding ORS 18.936—which plaintiff suggests should not apply, given the stipulated judgment— and despite having not included that amount in the writ of execution.[10] In that regard, plaintiff suggests that, "even if [we determine] that entry of the Second Supplemental Judgment itself was improper," we should nonetheless

---

[10] At one point, plaintiff suggests that—even if ORS 18.936 does apply here— that statute is "flexib[le]" and allows credit bids to include amounts for expenditures like advances for taxes. We reject that argument because, as explained above, the lender can recover, through a credit bid, no more other than "the full amount owing on the money award" plus costs. ORS 18.042; ORS 18.936.

conclude that "inclusion of the advances in the credit bid [was] still valid." Plaintiff does not, however, explain what *result* would follow from such a legal conclusion. We assume that plaintiff must be suggesting that—even if we vacated the "second supplemental general judgment"—we should somehow affirm the *practical* result of the trial court's order and judgment by holding that plaintiff is entitled to retain the excess $97,692.59 that it included in its credit bid.

We perceive at least three problems with any such argument. First, it would amount to a request that, if we agreed with defendant that the trial court erred in entering the October 2011 judgment, we should reverse the trial court's ruling (made in the context of sustaining defendant's objection to the sheriff's return of the writ of execution) that plaintiff's credit bid was improper. If plaintiff wished to challenge that intermediate ruling of the trial court, it was required to do so by a cross-assignment of error. It did not.[11] Second, plaintiff has not explained why the limitations on credit bids set out in ORS 18.936 do not apply to all sheriff's sales that occur after that statute's effective date, notwithstanding contrary provisions included in earlier judgments. Other than generally appealing to our sense of equity, plaintiff does not engage in any statutory analysis or point to any legal principles explaining why the requirements of ORS 18.936 do not apply to this case.[12] Third, as already noted, plaintiff has not explained what result should follow if we

[11] ORAP 5.57 sets out when a respondent must cross-assign error to a trial court's ruling in order to have us consider that ruling on appeal:

"(1) A respondent must cross-assign as error any trial court ruling described in subsection (2) of this rule in order to raise the claim of error in the appeal.

"(2) A cross-assignment of error is appropriate:

"(a) If, by challenging the trial court ruling, the respondent does not seek to reverse or modify the judgment on appeal; and

"(b) If the relief sought by the appellant were to be granted, respondent would desire reversal or modification of an intermediate ruling of the trial court."

[12] We note that the statute does not leave a creditor in plaintiff's position without any remedy, that is, without any way to recover the amounts that it had advanced in taxes. As one example of a possible remedy, plaintiff could have—at any time before requesting a writ of execution—pursued a supplemental judgment that included a money award for those advances, which then could have been included in the credit bid under ORS 18.936.

agreed that the trial court erred in sustaining defendant's objection to the return of the writ. The combination of plaintiff's failure to cross-assign error and the lack of any meaningful argument on the applicability of ORS 18.936 leads us to reject any suggestion that we should reverse the trial court's order on rehearing to the extent that it sustained defendant's objection to the return of the writ.

## IV.  CONCLUSION

The trial court lacked authority to enter a "second supplemental general judgment" both because no such form of judgment can exist, under Oregon law, and because the court lacked authority to enter a judgment after a sheriff's sale awarding plaintiff money to be paid from the proceeds of the sale that had already occurred. Accordingly, we vacate that "second supplemental general judgment."

We also conclude that, once the trial court had confirmed the sale of the property and sustained defendant's objection to the sheriff's return of the writ of execution on the ground that plaintiff improperly included advances in its credit bid, the court was required to distribute the excess amount of the bid pursuant to an order of distribution. We reverse the trial court's contrary ruling, encompassed within its October 2011 order on rehearing.

Judgment entered on October 11, 2011, vacated and remanded.